Victor R. POLEWSKY, Plaintiff;

v.

BAY COLONY RAILROAD
CORPORATION,
Defendant.

No. 2:92–CV–32.

United States District Court,
D. Vermont.

July 30, 1992.

Victor R. Polewsky, pro se.

Robert A. Gensburg, St. Johnsbury, Vt. for defendant.

## OPINION AND ORDER

PARKER, Chief Judge.

On May 15, 1992, petitioner, Victor R. Polewsky, filed a petition to vacate or set aside arbitration Award No. 2993[1] issued

---

1. This Award found that in view of the fact that petitioner was separated from employment for

by the National Railroad Adjustment Board (the "NRAB"). Respondent, Bay Colony Railroad Corporation, has moved for dismissal. Petitioner argues that the NRAB exceeded its authority in rendering the award by considering matters outside its jurisdiction and by violating the Railway Labor Act. Petitioner also seeks a status conference to be apprised of how the court will handle his case procedurally.

## FACTS

The undisputed material facts are as follows. On August 1, 1979, petitioner was employed by the Chicago Rock Island and Pacific Railroad Co., and was furloughed, other than for cause, on March 31, 1980.

On May 30, 1980, the Rock Island Transition and Employee Assistance Act was enacted giving discharged Rock Island Railroad workers, including Chicago Rock Island workers, released prior to January 1, 1984, a first right of hire with other carriers. 45 U.S.C. § 1004. Respondent is a "carrier" as defined in 45 U.S.C. § 151.

Pursuant to an agreement between petitioner's labor organization and Northeast Illinois Regional Commuter ("NIRC"), petitioner commenced work with the Rock Island Railroad May 31, 1980.

On June 29, 1980 petitioner was absent from work without permission in violation of Rule Q of the Uniform Code of Operating Rules (the "Code"). On January 5, 1981 petitioner wrote a letter to a Transportation Superintendent referring to certain superiors as "clowns," in violation of rule N of the Code.[2] In addition, petitioner made unauthorized personal telephone calls charged to NIRC during the period November 4, 1980 through December 3, 1980.

On February 4, 1981, NIRC dismissed petitioner from employment for cause, based on the three acts of misconduct. Petitioner appealed his dismissal to the NRAB on April 26, 1982. The NRAB found that NIRC did not act improperly because:

> Claimant [petitioner] has shown considerable intolerance with suggestions and directions from his supervisors. For reasons he was unable to effectively explain, he continuously, deliberately and flagrantly disregarded instructions not to make personal calls charged to Carrier's telephones.

Public Law Board ("PLB") 3024 Awards, No. 4, paragraph 3.

Meanwhile, shortly after August 13, 1981, petitioner registered with the Railroad Retirement Board (the "RRB") and the Central Register. Before hiring new employees, respondent was required to check with the Central Register to determine whether employees with first right of hire were available. 45 U.S.C. § 797c(c). Respondent did not contact the Central Register before it hired employees to perform operations effective June 12, 1982. Respondent continued to hire employees through July 10, 1982.

In June 1983, petitioner first became aware of the existence of respondent and inquired as to employment opportunities. Respondent claims that it was not hiring at that time. After being denied an interview, petitioner filed a complaint with the RRB on June 14, 1983 in accordance with 42 U.S.C. § 797c(g). On October 4, 1983 the RRB commenced an investigation which respondent answered on October 26, 1983.

On August 9, 1985, the RRB issued its finding of possible violations and referred the dispute to the NRAB. On December 16, 1988, the NRAB remanded the case requiring a conference on the property "to allow the parties to properly develop a complete record [as required by 45 U.S.C. § 152] containing all relevant evidence before the submission of the case to the [National Railroad Adjustment] Board." Award No. 27637 at p. 6. After the RRB

---

cause, he had no right of first hire with respondent, and his carrier's subsequent failure to comply with certain requirements did not damage or prejudice petitioner. (Paper # 10 in the court's docket).

2. In relevant part, rule N requires courteous behavior by all employees in their dealings with subordinates and each other.

completed a record, the dispute was returned to the NRAB.

On May 7, 1992 the NRAB issued an order in respondent's favor denying that petitioner had a right of first hire with respondent. The NRAB also found that the respondent's "subsequent failure to comply with certain procedural requirements" of the RRB did not damage or prejudice the petitioner. Award No. 29223 at p. 3.

Petitioner appealed the NRAB decision in a pro se complaint filed in this court as a "Petition to Vacate and Set Aside Arbitration Award."[3] (Paper # 11). This court has jurisdiction to review the NRAB decision pursuant to 45 U.S.C. § 153 First (q).

*Discussion*

## I. REVIEW OF NRAB DECISION

### A. *The Scope of Review of National Railroad Adjustment Board Decisions is Extremely Narrow*

■ The finality and binding nature of NRAB award decisions, 45 U.S.C. § 153 First (m), warrants that judicial review of such decisions is extremely limited. *Coppinger v. Metro–North Commuter R.R.,* 861 F.2d 33, 36 (2d Cir.1988); *DeClara v. Metropolitan Transp. Auth.,* 748 F.Supp. 92, 94 (S.D.N.Y.1990), *aff'd.,* 930 F.2d 911, *cert. denied,* — U.S. —, 112 S.Ct. 193, 116 L.Ed.2d 154 (1991); *Decker v. CSX Transp., Inc.,* 688 F.Supp. 98, 110 (W.D.N.Y.1988), *aff'd.,* 879 F.2d 990, *cert. denied,* 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 740 (1990). The NRAB (or arbitration panels designated by the NRAB pursuant to 45 U.S.C. § 153 First (i) and § Second) has primary and exclusive jurisdiction over all employee grievances involving the interpretation or application of collective bargaining agreements (so-called "minor disputes").[4] *Consolidated Rail Corp. v. Railway Execs. Ass'n,* 491 U.S. 299, 304, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989) (citing *Union Pac. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978)). There are strong policy reasons for such narrow judicial review, since the effectiveness of the NRAB in fulfilling its task depends on the finality of its determinations. *Union Pac.,* 439 U.S. at 94, 99 S.Ct. at 402.

Judicial review of NRAB decisions is appropriate only in three specific instances:

On such review, the finding and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for [1] failure of the division to comply with the requirements of this chapter, [2] for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or [3] for fraud or

---

**3.** Petitioner attempted to initiate this case by filing a motion to compel the NRAB to issue its decision on January 27, 1992 (Paper # 1). Respondent treated the motion as a complaint, which it moved to dismiss on February 19, 1992 (Paper # 3). On May 7, 1992, the NRAB issued its decision in this case, mooting plaintiff's initial complaint. *See Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 942–43 (D.C.Cir.1986), *vacated on other grounds,* 494 U.S. 1001, 110 S.Ct. 1329, 108 L.Ed.2d 469 (1990) (Action to compel administrative action on proposed regulations submitted for review was mooted when defendants acted on all proposed regulations. "The harm that would be redressed ... has already been eliminated"); *Gray v. Office of Personnel Management,* 771 F.2d 1504, 1514 (D.C.Cir.1985), *cert. denied,* 475 U.S. 1089, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986) (Claim for mandamus to compel an agency to act on the plaintiff's claim was mooted when the agency rendered its decision); *Kansas City Power & Light Co. v. Public Serv. Comm'n,* 651

F.2d 595 (8th Cir.1981) (Action to require a state public utility commission to provide a hearing on a request for an interim rate increase was mooted by the hearing provided on the parallel request for a permanent rate increase, since the hearing covered all issues that would be involved in an interim rate hearing).

Indeed, petitioner indicates in his Motion for Status Conference (Paper # 14) that his original petition to compel an order has become moot since the NRAB issued its order. Therefore, petitioner's initial motion in this case as well as all of its progeny (Papers # 1, # 3, # 5, and # 8) are dismissed for mootness. Accordingly, presently before this court are petitioner's appeal from the NRAB decision (Paper # 11) and Motion for Status Conference (Paper # 14).

**4.** In the railroad context, "major disputes seek to create contractual rights, minor disputes enforce them." *Consolidated Rail Corp. v. Railway Execs. Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989).

corruption by a member of the division making the order.

45 U.S.C. § 153 First (q). Unless petitioner's argument is rooted in one of these three exceptions, the NRAB's finding must stand.

### B. *The NRAB did not violate the Railway Labor Act*

■ On appeal from the NRAB decision, petitioner relies on two alleged procedural deficiencies of the NRAB. First, petitioner contends that the NRAB violated the Railway Labor Act by "failing to consider the dates of the discipline it refered [sic] to upon the record of Public Law Board ["PLB"] 3024 awards, since that date would have had a different effect of the action...." [5] Apparently, petitioner believes this court should review the NRAB decision because of the Board's failure to comply with certain procedural requirements.

Neither the record nor petitioner's brief indicate that the NRAB either did or did not consider the dates of the discipline raised in the 3024 awards. In any event, all of petitioner's misconduct referred to in the 3024 awards occurred between June 1980 and January 1981, and the awards confirming both the misconduct and that petitioner was properly discharged are all dated April 26, 1982. Thus, petitioner did not have first right of hire status [6] either in June 1982 when respondent began operations or in June 1983 when petitioner contacted respondent. No matter what dates the NRAB considered, petitioner had no right of first hire with respondent during the time in which respondent was hiring. Accordingly, this court need not address the issue of whether petitioner was qualified for the jobs available with respondent in 1982. Because the undisputed evidence supports the NRAB finding that petitioner was dismissed for cause, that fact in and of

itself made petitioner ineligible for first right of hire status.

### C. *The NRAB Properly Confined Itself to Matters within its Jurisdiction in Reaching its Decision*

■ The second basis for petitioner's appeal from the NRAB decision is that the NRAB exceeded its jurisdiction, making review by this court appropriate under 45 U.S.C. § 153 First (q). It is unclear from petitioner's arguments what specific acts he feels were outside the NRAB's jurisdiction. The gravamen of petitioner's argument appears to be that the NRAB, in coming to its decisions on the 3067 awards, considered evidence it should not have. Petitioner argues that, somehow, this is proof that the NRAB did not confine itself to matters within its jurisdiction.

In support of his contention petitioner argues that "[b]y continuous precedent of the Adjustment Board, and the Third Division thereof in particular, only facts and records which were used by the parties prior to commencement of arbitration proceedings may be considered by the Adjustment Board in rendering its award." The only "precedent" petitioner cites is Award No. 27637 at p. 4 paragraph 5—the initial award in this matter that remanded the case from the NRAB to allow the parties to develop a complete record of the relevant facts.

In fact, p. 4 paragraph 5 of award 27637 states that the order "is limited to the particular facts and circumstances of this dispute." Petitioner contends that the NRAB erred because it dismissed petitioner's complaint on grounds that had "never been submitted to the Board prior to award number 27637, never brought up or discussed in conference between the parties, and [were] otherwise irrelevant, itself outside the limitation placed by award number 27637." Petition to Vacate, p. 2, paragraph 40.

---

5. PLB awards are the official findings of the NRAB. PLB 3024 is actually 5 separate findings (Award No. 1, 2, 3, 4, and 5) relating to disciplinary actions by petitioner's employer which culminated in approval of petitioner's being released for cause (see Award No. 5).

6. The statute unambiguously qualifies a person's right of first hire by excluding those who are separated from employment for cause. "Each person who is an employee ... and is separated or furloughed (*other than for cause*)...." 45 U.S.C. § 1004(a) (emphasis added).

Petitioner in effect argues that the Board should have only considered evidence the parties directly addressed at the prior conference. This entails a misreading of the language of Award No. 27637 which, in fact, simply limits the NRAB's review to the facts of the dispute. Furthermore, petitioner's interpretation is inconsistent with the statute. The statute provides that the NRAB is to be presented "with a full statement of the facts and all supporting data bearing upon the disputes." 45 U.S.C. § 153 First (i); 29 C.F.R. § 301.2(a). This language did not, as petitioner contends, limit the NRAB's review to evidence raised prior to the remand; it simply limited the evidence to that which was related to the particular facts and circumstances of the dispute.

Defined in its broadest sense, the "dispute" involves respondent's failure to hire petitioner. The NRAB dismissed petitioner's complaint because he had no right of first hire since he "was separated from employment for cause." Award No. 29223. The NRAB properly reviewed petitioner's past work history since it was needed to determine if he was released for cause. Thus, the NRAB finding and order cannot be disturbed by this court, pursuant to 45 U.S.C. § 153 First (q). In summary, petitioner failed to show that the Board (1) did not comply with the statute, (2) failed to confine itself to matters within its jurisdiction, or (3) engaged in fraudulent activities in making the order. Thus, review by this court is inappropriate.

## II. PETITIONER'S MOTION FOR STATUS CONFERENCE

Petitioner seeks a status conference to "determine and otherwise ascertain, whether or not the court will entertain other pleadings to determine if and how the court will proceed to a free hearing upon the merits of the controversy." Given the extremely limited nature of this court's scope of review of the NRAB decision, no additional pleadings need be entertained and the merits of petitioner's case will not be addressed, negating the need for a hearing on these issues. Accordingly, petitioner's Motion for Status Conference is DENIED.

## CONCLUSION

The Petition to Vacate and Set Aside National Railroad Adjustment Board Award No. 29223 (Paper # 11) is hereby DENIED.

Petitioner's Motion for a STATUS conference (Paper # 14) is likewise DENIED.